UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MELISSA C.,[1] | Case No. 3:19-cv-01951-MK |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COMMISSIONER, Social Security Administration, | |
| Defendant. | |

**Kasubhai,** United States Magistrate Judge:

Plaintiff Melissa C. seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). *See* ECF No. 6. For the reasons that follow, the Commissioner's final decision is REVERSED and this case is REMANDED for further proceedings.

---

[1] In the interest of privacy, the Court uses only the first name and last name initial of non-government parties whose identification could affect Plaintiff's privacy.

Page 1 — OPINION & ORDER

## PROCEDURAL BACKGROUND

Plaintiff filed applications for DIB and SSI in July 2016 alleging a disability onset date of January April 15, 2013.[2] Tr. 15; Tr. 195–98. Plaintiff's claims were denied initially and upon reconsideration. Tr. 15; Tr. 66–137; Tr. 141–56. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held in September 2018. Tr. 37–65; Tr. 157–158. On October 30, 2018, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Tr. 15–32. The Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision of the Commissioner. Tr. 1–6. This appeal followed.

## FACTUAL BACKGROUND

Plaintiff was 30 years old on the alleged onset date. Tr. 30. She is a high school graduate and attended two years of college. Tr. 30, 56. Plaintiff has past relevant work as cashier, kitchen helper, and bartender helper. Tr. 30. She alleges disability due to multiple sclerosis; attention deficit disorder, post-traumatic stress disorder; loss of motor skills on her left side; numbness on her right side; chronic fatigue; knee pain; difficulty standing and walking; and severe depression. Tr. 218.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a

---

[2] "Tr." citations are to the Administrative Record, ECF No. 14.

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If

not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found Plaintiff met the insured status requirements of the Act and had not engaged in substantial gainful activity since the alleged onset date. Tr. 17. At step two, the ALJ found Plaintiff had the following severe impairments: multiple sclerosis; bilateral patellar chondromalacia involving both knees; borderline obesity; depression; and anxiety. Tr. 18. At step three, the ALJ found Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of a Listed impairment. Tr. 18. Before proceeding to the fourth

Page 4 — OPINION & ORDER

step, the ALJ assessed Plaintiff's residual functional capacity ("RFC"). The ALJ found Plaintiff

had the RFC to perform a full range of sedentary work, with the following nonexertional

limitations:

> [She was] limited to no more than occasional balancing, stooping, crouching, crawling, kneeling, climbing, or pushing/pulling with her left lower extremity. She would also need to avoid concentrated exposure to temperature extremes and vibrations, as well as any exposure to unprotected heights, moving machinery, and similar hazards. [She was] further limited to simple, repetitive, routine tasks.

Tr. 21. At step four, the ALJ found Plaintiff was unable to perform any past relevant work. Tr.

29. At step five, the ALJ found, in light of Plaintiff's age, education, work experience, and RFC,

a significant number of jobs existed in the national economy such that Plaintiff could sustain

employment despite her impairments. Tr. 30–31. The ALJ thus found Plaintiff was not disabled

within the meaning of the Act. Tr. 31.

## DISCUSSION

Plaintiff asserts that remand is warranted for two reasons: (1) the ALJ improperly

rejected the medical opinion evidence supplied by her treating neurologist; and (2) the ALJ erred

at step five by failing to account for an apparent conflict between the vocational expert's ("VE")

testimony and the Dictionary of Occupational Titles ("DOT"). The Court addresses each

argument in turn.

### I.     Medical Evidence

Plaintiff contends that the ALJ improperly rejected the opinion of Plaintiff's treating

neurologist, Elisabeth Lucassen, M.D. Pl.'s Opening Br. 9–18, ECF No. 17 ("Pl.'s Br."). The

ALJ is responsible for resolving conflicts in the medical record. *Carmickle v. Comm'r Soc. Sec.

Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The law distinguishes between the opinions of

three types of physicians: treating physicians, examining physicians, and non-examining physicians. *See* 20 C.F.R. §§ 404.1527, 416.927.[3] The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If a treating physician's opinion is not given "controlling weight," because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the ALJ should consider specific factors in determining the weight it will be given, including the nature of the treatment relationship, the quality of explanation provided, and the consistency of the medical opinion with the record as a whole. 20 C.F.R. §§ 404.1527, 416.927; *Orn*, 495 F.3d at 631.

A treating doctor's opinion that is not contradicted by the opinion of another doctor can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Where a doctor's opinion is contradicted, however, the ALJ must provide "specific, legitimate reasons" for discrediting the opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). An ALJ can meet this burden by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quotation omitted).

In September 2018, Plaintiff's neurological care for her multiple sclerosis was transferred from Kyle Smoot, M.D., to Dr. Lucassen who ultimately provided a letter opinion in support of Plaintiff's disability claims. Tr. 900 ("[Plaintiff] transferred care from Dr. Smoot to Dr. Lucassen on 9/7/18"); *see also* Tr. 22 ("Kyle Smoot, MD was the claimant's primary provider in her multiple sclerosis treatment."). Dr. Lucassen diagnosed Plaintiff with multiple sclerosis and

---

[3] The Commissioner has issued revised regulations changing this standard for claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Plaintiff's claim was filed before March 27, 2017, and therefore is controlled by 20 C.F.R. §§ 404.1527, 416.927.

Page 6 — OPINION & ORDER

lumbar spondylosis. *Id.* She explained that Plaintiff's primary symptoms included: dysphagia with some difficulty swallowing pills; poor balance with frequent falls; continuous numbness from the mid-trunk down her right lower extremity; depression; poor memory; fatigue; leg weakness greater on the left side; clonus in feet greater on left; and limited ambulation with foot drop on the left. *Id.*

Dr. Lucassen opined that Plaintiff met Listing 11.09(A), which the letter defined as "[d]isorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities." Tr. 901. The doctor also opined that Plaintiff met Listing 11.09(B), because Plaintiff had a marked limitation in her ability to understand, remember, or apply information. *Id.*

In terms of Plaintiff's residual physical functional capacity, Dr. Lucassen opined that Plaintiff could occasionally lift and/or carry less than ten pounds; she could stand and/or walk between one and two minutes at one time; she could stand and/or walk less than two hours in an eight-hour day; she could sit six hours in an eight-hour day; and that Plaintiff would experience fatigue as well as difficulty with memory while sitting. Tr. 901–02. Dr. Lucassen also concluded that Plaintiff was further limited in her ability to push and/or pull in her upper and lower extremities; she could never climb, balance, stoop/bend, kneel, crouch, or crawl; and she could occasionally reach, handle, finger, and feel due to permanent numbness from the mid-trunk down right lower extremity. Tr. 902.

Dr. Lucassen next opined that Plaintiff's attention and concentration would be impaired to such a degree that she could not perform even simple work tasks for twenty percent of a standard workweek. *Id*. Dr. Lucassen further concluded that Plaintiff would miss sixteen hours (or the equivalent of two full workdays) or more per month due to of fatigue, low energy, and

pain. Tr. 904. Finally, Dr. Lucassen explained that, based on her treatment of Plaintiff, her review of Plaintiff's medical records, and her medical judgment, it was reasonable to conclude that Plaintiff had been limited by her impairments on or before September 30, 2017, and that Plaintiff "has had clinical worsening since" September 2017. *Id*.

The ALJ gave no weight to Dr. Lucassen's opinion.[4] Tr. 27. Instead, the ALJ assigned weight to the opinions of the non-examining state agency consultants. Tr. 28–29. Significantly, the Court observes, the ALJ weighed the medical opinion evidence in such a manner that he did not rely on any medical professional who actually treated or examined Plaintiff. However, because Dr. Lucassen's opinion was contradicted by the reports of non-examining physicians, the ALJ was required to supply "specific and legitimate reasons" to reject the opinion. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

The Commissioner asserts Dr. Lucassen's opinion was properly rejected because (A) the opinion lacked objective support and was inconsistent with the longitudinal examination findings; and (B) was inconsistent with Plaintiff's activity levels. Def.'s Br. 9–13, ECF No. 19; *see also* Tr. 27–28.

### A. Objective Evidence and Longitudinal Findings

ALJs may consider the medical evidence underlying a medical provider's opinion. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more

---

[4] The Court notes that the Commissioner's characterization of the weight the ALJ assigned to the opinion lacks support in the record. *Compare* Def.'s Br. 3 ("As discussed below, the ALJ considered Dr. Lucassen's opinion and provide three specific and legitimate reasons *for giving it only partial weight*.") (emphasis added), *with* Tr. 27 ("The undersigned *gives this opinion no weight* . . . .") (emphasis added).

Page 8 — OPINION & ORDER

weight we will give that opinion."). And ALJs may also discount a medical opinion that is inconsistent with the evidence of record. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

Here, the ALJ essentially rejected Dr. Lucassen's opinion because the doctor had only recently taken over as Plaintiff's treating neurologist, which implicitly required the doctor to rely on treatment notes from other providers in forming her opinion. *See* Tr. 27 ("there are no supporting treatment records for the assessment made by Dr. Lucassen"); Tr. 28 ("There is no indication in the record that Dr. Lucassen had actually seen the claimant before she filled out the questionnaire."). That rationale, however, ignores the fact that Dr. Lucassen took over care from another doctor in the same office and would have had access to Plaintiff's longitudinal medical records. *See* Tr. 900. *Cf. Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1038 (9th Cir. 2003) (explaining a supervising psychiatrist could be considered a treating source where psychiatrist oversaw a team of therapists, even though the psychiatrist only saw the claimant once because other members of the treatment team had sufficient contact with the claimant); *see also Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (discussing the concept of treatment teams where nurse practitioner "worked closely with" another doctor).

Further, the doctor specifically noted that a "review of [Plaintiff's] medical records" formed the basis for her opinion. Tr. 904. An independent review of the medical evidence of record demonstrates that Dr. Lucassen's opined limitations found ample support. *See, e.g.*, Tr. 340 ("Patient is having an exacerbation of her Multiple Sclerosis. Her normal numbness in her right side worse and is affecting her left side and her mobility."); Tr. 499 (brain MRI "revealed 4 enhancing lesions"); Tr. 500 ("severe loss to vibration at the big toe bilaterally"); Tr. 509 ("Gait: Slow wide based gait with circumduction and scuffing of the left foot. Patient is unable to stand

on heels and toes bilaterally. Romberg is mildly positive."); *id.* ("Upon exam today: there is evidence of R hip flexor weakness 4/5 and ant tib 3/5 with clonus bilateral ankles non sustained."); Tr. 520 ("Ongoing cognitive dysfunction: short term recall, sometimes misses bills monthly."); Tr. 531 ("Her presentation is consistent with relapsing-remitting multiple sclerosis. Melissa recently had a relapse.); Tr. 540 ("left leg weakness which has progressed since our initial visit in 2011"); *id.* (increasing medication after noting that Plaintiff's "[d]epression is not well controlled"); Tr. 561 ("Her examination does reveal left leg weakness which has slightly increased since our last visit. Also, she now has an extensor response on the right."); Tr. 568 (mental status exam showing "[c]ognition: slightly worse short[-]term recall. She forgot her appointment in December despite being reminded" and depressed mood); Tr. 570 ("MRI of her knee demonstrated severe arthritis. The pain is impacting her ability to walk as well. Further, her mobility has declined now 25 foot walk 13 seconds previously 8.9 seconds. This is concerning given her age."); Tr. 573 ("Cognition: slightly worse short[-]term recall. She forgot her appointment in December despite being reminded."); Tr. 575 (presenting with "left leg weakness which has slightly increased since our last visit" and "MRI of her knee demonstrated severe arthritis" that was "impacting her ability to walk"); Tr. 576 ("Depression has worsened more recently mostly related to pain and inability to exercise").

      Finally, Dr. Lucassen did have at least a limited treating relationship with Plaintiff. Plaintiff spoke with Dr. Lucassen in July 2018 during a relapse where Plaintiff experienced "increased numbness in her right leg up to the groin she ha[d] not experienced to [that] extent before" and the doctor advised that Plaintiff seek emergency medical care. Tr. 766. Dr. Lucassen took over Plaintiff's care from Dr. Smoot approximately two months later. Tr. 900. On this

record, the Court finds that neither the objective medical evidence nor the longitudinal examination findings were specific and legitimate reasons to discount Dr. Lucassen's opinion.

### B.    Activities of Daily Living

The ALJ also rejected Dr. Lucassen's opinion based on Plaintiff's activities of daily living. Tr. 28. In some circumstances, an inconsistency between a treating provider's opinion and a claimant's daily activities may constitute a specific and legitimate reason to discount that opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citation omitted). Here, however, Plaintiff's limited daily activities are insufficient to justify rejecting Dr. Lucassen's opinion because they do not conflict with the doctor's opinion.

Critically, the ALJ did not identify which portions of the doctor's opinion conflicted with Plaintiff's limited daily activities. *See* Tr. 28. As the Ninth Circuit has explained, to meet the specific and legitimate standard required to reject a contradicted doctor's opinion, an ALJ "must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (citation omitted); *see also Beckett v. Comm'r, Soc. Sec. Admin.*, No. 3:09-cv-01052-JO, 2011 WL 4006644, at *2–3 (D. Or. Sept. 6, 2011) ("The Ninth Circuit repeatedly has explained that conclusory reasons will not justify an ALJ's rejection of a medical opinion[.]").

Moreover, Plaintiff testified that her ability to do housework was often unsuccessful "because it hurts to walk or [she] falls a lot." Tr. 48. Her ability to drive was "very limited," and she required assistance to go shopping "because [she] fall[s] or [she] need[s] help pushing her wheelchair." Tr. 49–50. As such, "a holistic review of the record does not reveal an inconsistency between" Dr. Lucassen's opinion and Plaintiff's daily activities and therefore this was not a specific and legitimate reason to reject the doctor's opinion. *Ghanim*, 763 F.3d 1162

("Although Ghanim performed some basic chores and occasionally socialized, the record also reveals that he relied heavily on his caretaker, struggled with social interactions, and limited himself to low-stress environments. A claimant need not be completely incapacitated to receive benefits.") (citation omitted).

In sum, the ALJ's evaluation of the medical record and rejection of Dr. Lucassen's opinion is not supported by substantial evidence in the record.

## II.     Step Five Finding

Plaintiff assigns error to the ALJ's step five finding. Pl.'s Br. 6–9. Specifically, Plaintiff contends that the ALJ's RFC, which limited Plaintiff to simple, repetitive, routine tasks, conflicted with the Level 3 Reasoning jobs that the VE identified at the hearing without a sufficient explanation. *Id*. (citing *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015)). *Zavlin* held that based on "an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning," an ALJ errs when she fails to "ask the [vocational] expert to explain why a person with" a limitation to simple, repetitive, routine tasks "could nevertheless meet the demands of Level 3 reasoning." *Zavalin*, 778 F.3d at 847. The Commissioner asserts the ALJ fulfilled his duty by asking the VE the basis for his departure from the DOT at the hearing. Def.'s Br. 6–9.

Ultimately, the Court need not resolve the parties competing arguments. An ALJ may rely on the testimony of a VE at step five. 20 C.F.R. §§ 404.1566, 416.966. However, an ALJ may rely on a VE's testimony only where such testimony is based on a hypothetical that "contain[s] all of the limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss,* 427 F.3d at 1217. Where an ALJ's hypothetical is based on a residual functional capacity assessment that does not include some of the claimant's limitations,

Page 12 — OPINION & ORDER

the VE's testimony "has no evidentiary value." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008).

Given the ALJ's errors in weighing the medical evidence discussed above, the VE's opinion in the case lacks evidentiary value. *Carmickle*, 533 F.3d at 1166; *see also Ghanim*, 763 F.3d 1154, 1166 (9th Cir. 2014) (explaining that an ALJ's RFC determination is flawed where the ALJ improperly discounted medical evidence and therefore the reliance on the corresponding VE opinion was error). Accordingly, the ALJ's step five finding is not supported by substantial evidence and must be reversed and this case must be remanded.

## III.    Remand

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g.*, *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015).

Here, the first requisite is met based on the errors discussed above. The ALJ failed to provide legally sufficient reasons for rejecting the opinion of Dr. Lucassen.

As to the second requisite, the Ninth Circuit has held that remanding for proceedings rather than for an immediate payment of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal quotations and citations omitted). Here, the Court finds that the record is ambiguous and would benefit from further development. For example, although Dr. Lucassen opined that Plaintiff would meet both Listing 11.09(A) and (B), his opinion was seemingly based on a review of medical records and not on firsthand experience regularly treating Plaintiff. As noted in Section I, the ALJ's evaluation of the medical opinion evidence did not rely on a single medical professional who actually treated or examined Plaintiff.

Accordingly, this case is remanded for further administrative proceedings on an open record specifically to: (1) order a consultative examination to assess the impact of Plaintiff's physical and mental impairments on her ability to function, including an opinion as to whether Plaintiff meets or equals Listing 11.09(A) or (B); (2) conduct a *de novo* review of the medical opinion evidence of record in light of the consultative examiner's opinion; (3) obtain additional VE testimony based on a reformulated RFC; (4) to the extent the ALJ relies on VE testimony that deviates from the DOT, sufficiently articulate reasons for the deviation in the written decision; and (4) conduct any further necessary proceedings. *See Burrell v. Colvin*, 75 F.3d 1133, 1141 (9th Cir. 2014) (observing that a court's "flexibility" includes the option to "remand on an open record for further proceedings" (citing *Garrison*, 759 F.3d at 1021)).

## CONCLUSION

For the reasons discussed above, the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is REVERSED and this case REMANDED

pursuant to sentence four of 42 U.S.C. §405(g) for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 30th day of December 2020.

s/ Mustafa T. Kasubhai  
MUSTAFA T. KASUBHAI (He/Him)  
United States Magistrate Judge